IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
___

ROYAL ELLIOTT,

          Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

OPINION AND ORDER

20-cv-226-slc
___

      Plaintiff Royal Elliott seeks judicial review of a final decision of defendant Kilolo Kijakazi, Commissioner of the Social Security Administration,[1] denying his claim for disability insurance benefits (SSDI) and supplemental security income (SSI) under the Social Security Act. 42 U.S.C. § 405(g). Elliott contends that the administrative law judge (ALJ) who denied his claim erred by: (1) not including a state agency reviewing physician's limitation that Elliott use a cane for walking and standing; and (2) failing to consider Elliott's subjective complaints that he needs a sit/stand option and rest breaks. Because I am not persuaded that either issue raised by Elliott warrants remand, I am affirming the Commissioner's decision.

**FACTS**

      The following facts are drawn from the Administrative Record (AR), filed with the Commissioner's answer in this case:

___

[1] Kilolo Kijakazi has replaced Andrew Saul as the head of SSA. I have amended the case caption accordingly.

On August 10, 2015, Elliott filed applications for a period of disability beginning on December 31, 2013, when he was 44 years old. AR 16. After Elliott's applications were denied initially and on reconsideration, ALJ Walter Hellums held a video administrative hearing on March 4, 2019, at which Elliott and a vocational expert (VE) testified. *Id.* Elliott was represented by his attorney, Curtis Lein. *Id.* The ALJ issued a written decision on March 20, 2019, finding that Elliott was not disabled.

The ALJ determined that even though Elliott suffered from the severe impairments of cervical and lumbar degenerative disc disease, bilateral carpal tunnel syndrome, left shoulder rotator cuff tear (status–post repair) with mild adhesive capsulitis, diabetes mellitus, depression, and bipolar disorder, he retained the residual functional capacity (RFC) to perform a reduced range of sedentary work. AR 19, 22. With respect to physical exertion, the ALJ limited Elliott to: occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally reaching overhead with the non-dominant, left upper extremity; frequently, but not constantly, handling and fingering with the bilateral upper extremities; and occasionally stooping, crouching, and crawling.[2] AR 22.

Relying on the testimony of the VE, the ALJ found that despite his limitations, Elliott could still perform the unskilled jobs of electronic assembler, final assembler, and document preparer in the national economy. AR 28. After the Appeals Council denied Elliott's appeal, Elliott filed his appeal in this court.

---

[2] The ALJ also assessed Elliott with several environmental and mental limitations, but those limitations are not relevant to Elliott's appeal.

**OPINION**

In reviewing an ALJ's decision, I must determine whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)). We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Elliott has submitted a vague and cursory brief in which he contends that the ALJ erred by failing to include the additional RFC limitations that Elliott needs a cane for walking and standing and a sit/stand option with rest breaks, which he says "may" preclude his ability to perform even sedentary work. By failing to develop either argument in any meaningful way, he has waived them. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018) (failure to develop argument in brief results in waiver); *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived,

3

as are arguments unsupported by legal authority."). In any event, Elliott's challenges are unfounded, as discussed briefly below.

**I. Cane**

In reaching his decision, the ALJ evaluated the assessments provided by state agency reviewing consultants Dr. Pat Chan (initial level of review on March 26, 2016) and Dr. Yacob Gawo (reconsideration level of review on January 26, 2017). AR 26 (citing AR 80, 119). Although Dr. Chan found Elliott capable of a range of light work, Dr. Gawo limited Elliott to sedentary work. The ALJ gave little weight to Dr. Chan's opinion, finding that Elliott's ongoing pain with standing, walking, and lifting limited him to sedentary work, which was consistent with Dr. Gawo's opinion. AR 26.

Elliott contends that the ALJ overlooked the fact that Dr. Gawo stated that "[a] medically required hand-held assistive device is necessary for ambulation." AR 116, 119. However, Elliott was not prescribed a cane until September 2018. Further, in the narrative portion of his opinion, Dr. Gawo clarified that Elliott "*[m]ay* need the use of a cane when ambulating on uneven terrain or for long distance ambulation." AR 117 (emphasis added). As the Commissioner argues, Dr. Gawo's statements do not unequivocally support Elliott's contention that he requires a cane for walking and standing.

Moreover, the ALJ specifically addressed Elliott's need for a cane in his decision. He acknowledged that at Elliott's request, a nurse practitioner had prescribed Elliott a cane on September 24, 2018, after Elliott had fallen due to weakness in his legs. AR 24, 2231-33, 2242. The ALJ noted that up to that point, Elliott was ambulating effectively. AR 24, 1798, 1840. On September 12, 2018, Elliott reported that he was not using an assistive device and his

physical examination revealed a steady gait. *Id.* (citing AR 2268-69). The ALJ also found that after obtaining his cane, Elliott was able to walk his 120-pound dog by November 17, 2018. *Id.* (citing AR 2390). Although Elliott testified that he still used the cane wherever he went to avoid falls, AR 53-54, the ALJ found no evidence in the record that the cane was meant to be a permanent device required for any type of ambulation. AR 24. The ALJ reasonably concluded that Elliott did not require an assistive-device limitation. However, given Elliott's pain, difficulty walking, and decreased strength in his lower extremities, the ALJ stated that he was limiting Elliott to limited sedentary work. *Id.*

Because Elliott has not challenged the ALJ's specific findings regarding his need for a cane or presented any evidence showing that his cane prescription was meant to be a permanent medical requirement for standing and walking, he has failed to show that the ALJ committed reversible error in not including the use of a cane as a limitation in the RFC assessment.

## II. Sit/Stand Option and Rest Breaks

In his second argument, Elliot contends that the ALJ's evaluation of his subjective symptoms was deficient because the ALJ failed to consider Elliott's testimony that he needs a sit/stand option and rest breaks throughout the day. At the hearing, Elliott testified that he can stand in one spot for only 10 to 15 minutes before needing to sit down and depending on the chair that he is in, can sit for only 5 to 25 minutes before standing again. AR 52-53. Elliott also testified that he needs daily rest breaks of two to three hours in length to relieve the pressure on his back from sitting and standing. *Id.*

An ALJ's findings about a plaintiff's testimony and allegations regarding his symptoms are entitled to great deference, and they should be upheld unless patently wrong. *Summers v.*

*Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).  An ALJ is only required to give reasons sufficient to provide a fair sense of how the ALJ assessed plaintiff's testimony and statements.  Social Security Ruling (SSR) 16-3p.  Moreover, the ALJ does not need to explain why each of the claimant's statements deserved little weight.  *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012).  The court reads the decision as a whole to determine whether the ALJ adequately supported the subjective-symptom evaluation.  *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2014).  Not all of the ALJ's reasons have to be sound as long as enough of them are.  *Halsell v. Astrue*, 357 Fed. Appx. 717, 722-723 (7th Cir. 2009).

The ALJ specifically mentioned Elliott's allegations regarding his sitting, standing, and resting limitations but concluded that Elliott's self-reports about the extent of his disabling symptoms were not supported by his physical examination findings, imaging and testing, the nature of his treatment, and some of his daily activities.  AR 22-23.  The ALJ discussed each of Elliott's physical conditions in detail and explained why he did not believe that Elliott was as limited as he claimed to be.  With respect to Elliott's lumbar degenerative disc disease in particular, the ALJ pointed out that after Elliott underwent a hemilaminectomy and mesial facetectomy in March 2015, there were no additional surgical recommendations and his MRI showed no root impingement or lumbar stenosis.  AR 23 (citing AR 793).  The ALJ noted that Elliott's subsequent physical examinations revealed that he had some back pain, but straight leg testing was negative and his gait was normal.  *Id.* (citing AR 2276).  The ALJ also found it significant that Elliott's functioning and pain had improved with physical therapy and he was able to stand and cook for 30 minutes without significant back pain, drive a camper for two hours, and walk his 120-pound dog on a leash.  AR 23-24.

Elliott did not challenge any of the ALJ's specific findings regarding the evaluation of his subjective complaints. In his reply brief, Elliott takes issue with the ALJ's reliance on Elliott's ability to walk his dog and drive a camper, but he has forfeited that issue by failing to raise it in his opening brief. *Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016) (arguments made for first time in reply briefs are waived). As with his previous argument, Elliott also does not cite any evidence showing that his treatment providers assessed him with a sit/stand option and a need for rest breaks, or that the ALJ ignored any medical evidence supporting such restrictions.

For all of the above reasons, I find that the ALJ's decision is thorough and generally well reasoned and neither of the issues raised by Elliott warrants remand. Accordingly, I will affirm the Commissioner's decision denying benefits.

**ORDER**

IT IS ORDERED that the that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Royal Elliott's application for disability benefits, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 9th day of August, 2021.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge